IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TONY CREWS,                          )
                                     )
              Plaintiff,             )
                                     )
                                     )
       v.                            )        1:17CV943
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of               )
Social Security,                     )
                                     )
              Defendant.             )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge

Plaintiff Tony Crews brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and granting his claim for Supplemental Security Income ("SSI") as of November 7, 2014. (Doc. 2.) Defendant has filed the certified administrative record (Doc. 8 (cited herein as "Tr.")),[1] and both parties have moved for judgment (Docs. 10, 12; see also Doc. 11 (Plaintiff's Memorandum); Doc. 13 (Defendant's Memorandum)). For the reasons that follow, the court will remand this matter for further administrative proceedings.

---

[1] Citations to the administrative record refer to the original transcript page numbers, not the CM/ECF page numbers.

## I.    PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of May 1, 2008.  (Tr. 174-88.)  Upon denial of his DIB claim initially (Tr. 86-95, 107-110) and on reconsideration (Tr. 96-106, 112-15),[2] Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  (Tr. 117-18).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 42.)  The ALJ subsequently denied Plaintiff's DIB claim but granted Plaintiff's SSI claim as of November 7, 2014.  (Tr. 17-34.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 172-73, 260-62), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2012.

2.    [Plaintiff] has not engaged in substantial gainful activity since the alleged onset date.

. . .

3.    Since the alleged onset date of disability, May 1, 2008, [Plaintiff] has had the following severe impairments: coronary artery disease (CAD); diabetes mellitus type 2; congestive heart failure (CHF); history of small bowel resection; chronic obstruction [sic]

---

[2] The record (both before the ALJ and before this court) lacks an initial and reconsideration level determination of Plaintiff's SSI claim, as noted by the ALJ at the hearing (see Tr. 41).  However, the ALJ proceeded to adjudicate Plaintiff's SSI claim, granting SSI benefits as of November 7, 2014.  (See Tr. 33-34.)

pulmonary disease (COPD); stage III kidney disease; lumbar spine degenerative disc disease; cervical spine degenerative disc disease; peripheral neuropathy; depression; and cognitive disorder.

. . .

4.   Since the alleged onset date of disability, May 1, 2008, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [P]rior to November 7, 2014, the date [Plaintiff] became disabled, [he] had the residual functional capacity to perform sedentary work . . . with lifting or carrying 20 pounds occasionally and 10 pounds frequently, sitting six hours total in an eight-hour workday, standing or walking two hours total in an eight-hour workday, pushing or pulling to the extent he can lift or carry, and the following exceptions: occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; frequently balancing, crouching, or stooping; occasionally kneeling or crawling; avoiding more than frequent exposure to unprotected heights and moving mechanical parts; avoiding more than frequent exposure [to] dusts, odors, fumes, gases, extreme heat, or extreme cold; and requiring the option to alternate after 15 to 30 minutes of sitting to standing for 5 to 10 minutes, after 15 to 30 minutes of standing to sitting for 10 to 15 minutes, and after 15 to 30 minutes of walking to sitting for 5 to 10 minutes. Additionally, due to mental impairment, [Plaintiff] is able to do the following: perform simple, routine, and repetitive tasks; understand simple oral instructions; never operate a motor vehicle; make simple work-related decisions; and frequently respond to coworkers and the public.

. . .

6.   . . . [B]eginning on November 7, 2014, [Plaintiff]

has the residual functional capacity to perform
sedentary work . . . with lifting or carrying 20 pounds
occasionally and 10 pounds frequently, sitting six hours
total in an eight-hour workday, standing or walking two
hours total in an eight-hour workday, pushing or pulling
to the extent he can lift or carry, and the following
exceptions: occasionally climbing ramps or stairs; never
climbing ladders, ropes, or scaffolds; frequently
balancing, crouching, or stooping; occasionally kneeling
or crawling; avoiding more than frequent exposure to
unprotected heights and moving mechanical parts;
avoiding more than frequent exposure [to] dusts, odors,
fumes, gases, extreme heat, or extreme cold; and
requiring the option to alternate after 15 to 30 minutes
of sitting to standing for 5 to 10 minutes, after 15 to
30 minutes of standing to sitting for 10 to 15 minutes,
and after 15 to 30 minutes of walking to sitting for 5
to 10 minutes. Additionally, due to mental impairment,
[Plaintiff] is able to do the following: perform simple,
routine, and repetitive tasks; understand simple oral
instructions; never operate a motor vehicle; make simple
work-related decisions; and frequently respond
appropriately to coworkers and the public.
Additionally, due to a combination of impairments,
[Plaintiff] is limited to work that permits him to be
off-task 20% of the workday, in addition to regularly
scheduled breaks.

. . .

7.  Since May 1, 2008, [Plaintiff] has been unable to
perform any past relevant work.

. . .

11. Prior to November 7, 2014, considering
[Plaintiff's] age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . .

12. Beginning on November 7, 2014, considering

[Plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

13. [Plaintiff] was not disabled prior to November 7, 2014, but became disabled on that date and has continued to be disabled through the date of this decision.

14. [Plaintiff] was not under a disability within the meaning of the [] Act at any time through December 31, 2012, the date last insured.

(Tr. 23-33 (bold font and internal parenthetical citations omitted).)

## II.  ANALYSIS

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the court's] review of [such] a decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the court will remand this case for further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through

application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (first and second alterations in original) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the court], therefore, is not whether [the claimant] is disabled, but

whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," and that, in this context, "disability" means "the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981) (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability . . . governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro,

---

[4]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC")."  Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, at which point the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,] . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (emphasis and internal quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

**B.  Assignments of Error**

According to Plaintiff, the court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to assign weight to Plaintiff's [Veterans Administration ("VA")] disability ratings and by failing to obtain the VA rating decision" (Doc. 11 at 5); and

2) "[t]he ALJ improperly evaluated Plaintiff's post viral cardiomyopathy when determining the onset date of his disability in [the ALJ's] partially favorable decision" (<u>id.</u> at 7).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Doc. 13 at 4-18.)

**a.  VA Disability Rating**

Plaintiff's first assignment of error asserts that "[t]he ALJ erred by failing to assign weight to Plaintiff's VA disability

---

[6]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See</u>, <u>e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

ratings and by failing to obtain the VA rating decision." (Doc. 11 at 5.) In particular, Plaintiff argues that, although "the ALJ noted that [Plaintiff] 'received a service connected disability rating of 30% for his spinal disorders[,]' [t]he ALJ [] did not assign weight to this rating." (Id. (quoting Tr. 26) (internal citation to administrative transcript omitted).) According to Plaintiff, the Fourth Circuit "found in Bird[ v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012),] that[,] absent clear reasons for deviation, 'in making a disability determination, the [Commissioner] must give substantial weight to a VA disability rating.'" (Doc. 11 at 5.) Plaintiff additionally claims the ALJ violated his duty to develop the record by failing to "obtain a copy of the VA rating decision in this case, despite being aware of its existence." (Id. at 6 (citing, *inter alia*, Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), and Coy v. Colvin, No. 5:13-CV-770-BO, 2015 WL 409447, at *2 (E.D.N.C. Jan. 29, 2015).) Plaintiff's argument regarding the ALJ's failure to analyze and weigh Plaintiff's VA disability rating has merit and warrants remand.

In Bird, the Fourth Circuit addressed for the first time the "weight that the [Social Security Administration ("SSA")] must afford to a VA disability rating." Bird, 699 F.3d at 343. The

court observed the similarities between the evaluation of disability by the VA and the SSA:

> [B]oth the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims.

Id. (internal quotation marks and citation omitted). After reviewing the "varying degrees of evidentiary significance" other circuits afford VA disability ratings, the Fourth Circuit held as follows:

> The VA rating decision reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added); see also Social Security

Ruling 06-03p, Titles II and XVI:II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *6-7 (Aug. 9, 2006) ("SSR 06-03p") ("[E]vidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered," and "the [ALJ] should explain the consideration given to these decisions in the notice of decision"); 20 C.F.R. §§ 404.1504, 416.904.[7]

In this case, Plaintiff's VA medical records reflect that the VA issued a service-connected disability rating of 30% to Plaintiff, consisting of 20% for lumbosacral or cervical strain and 10% for intervertebral disc syndrome. (See, e.g., Tr. 514.) The record does not contain the VA's rating decision and,

_____

[7] For claims filed on or after March 27, 2017, the SSA has rescinded SSR 06-03p and amended Sections 404.1504 and 416.904. See 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulations provide that the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. §§ 404.1504, 416.904. In rescinding SSR 06-03p, the SSA noted that for claims filed on or after March 27, 2017, ALJs "will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive." 82 Fed. Reg. 15263-01. Because Plaintiff filed his claims for DIB and SSI in 2013 and 2014, respectively (see Tr. 21), the court will apply SSR 06-03p and the prior version of Sections 404.1504 and 416.904 to Plaintiff's contentions in his first assignment of error.

therefore, lacks the date of the rating, the identity of the medical professional(s) issuing the rating, the reasoning underlying the rating, and any opinions or functional limitations issued along with the rating. The ALJ mentioned the rating once in his summarization of the record evidence, noting that Plaintiff "experiences secondary conditions such as . . . spinal degenerative disc disease" and "received a service-connected disability rating of 30% for his spinal disorders." (Tr. 26 (citing Tr. 514).)

Here, the ALJ's mere passing reference to Plaintiff's VA rating, coupled with the ALJ's failure to assign a weight to the rating, clearly runs afoul of <u>Bird</u>. See <u>Bird</u>, 699 F.3d at 343 ("[I]n making a disability determination, the SSA <u>must</u> give <u>substantial weight</u> to a VA disability rating" but "may give less weight to [the] rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate." (emphasis added)); <u>see</u> <u>also</u> <u>Alvarez v. Comm'r of Soc. Sec.</u>, No. 2:15-CV-363, 2016 WL 4651373, at *5 (M.D. Fla. Sept. 7, 2016) (rejecting the Commissioner's arguments that ALJ's passing references to VA disability rating and failure to weigh rating constituted harmless errors); <u>Smith v. Astrue</u>, No. 3:08-cv-406, 2009 WL 3157639, at *7 (M.D. Fla. Sept. 25, 2009) (finding that ALJ's cursory reference

to VA disability determination in decision and failure to weigh that determination warranted remand).  Moreover, the fact that the VA rated Plaintiff's disability at less than 100% does not excuse the ALJ's failure to analyze and weigh the rating under Bird, the applicable regulations, and SSR 06-03p.  See Wilmore v. Comm'r of Soc. Sec., No. 12-14532, 2014 WL 320072, at *4 (E.D. Mich. Jan. 29, 2014) ("The Court disagrees with [the magistrate judge's] conclusion that[,] in the absence of a 100 percent disability finding by the VA, the ALJ is not required to adopt or even consider the VA's determination.  Contrary to the conclusion reached in the [recommendation], . . . . SSR 06-03p, promulgated for the purpose of clarifying how the [SSA] considers decisions by other governmental agencies on the issue of disability, contains no such limiting language and the Court, which is not embraced within the executive branch of government, will not read words into a regulation that are simply not there." (internal citations, quotation marks, and brackets omitted)); Tremble v. Colvin, No. 2:15-CV-00001-D, 2016 WL 484214, at *9 (E.D.N.C. Jan. 20, 2016) (applying requirements of Bird to VA disability rating of 30%), recommendation adopted, No. 2:15-CV-1-D, 2016 WL 528057 (E.D.N.C. Feb. 8, 2016); Stewart v. Colvin, No. ED CV 14-01573-AS, 2015 WL 6681173, at *10 (C.D. Cal. Nov. 2, 2015) (remanding where ALJ did

not provide sufficient reasons for assigning little weight to VA's 40% disability rating); Bishop v. Colvin, No. 1:14CV489, 2015 WL 4755768, at *6 (M.D.N.C. Aug. 11, 2015) (finding ALJ reversibly erred under Bird by assigning little weight to VA's 70% disability rating), recommendation adopted, slip op. (M.D.N.C. Sept. 9, 2015).

Notwithstanding the ALJ's failure to analyze or weigh the VA's disability rating, the Commissioner argues "that to the extent that the VA rating warranted substantial weight, the ALJ gave it such weight[ and, t]hus, [Plaintiff] has failed to show remand would change the ALJ's decision." (Doc. 13 at 6 (citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").) In that regard, the Commissioner points out that "the ALJ credited [Plaintiff] with severe degenerative disc disease of the lumbar and cervical spines at step two" (id. (citing Tr. 23-24)) and, "in formulating [Plaintiff's] RFC . . ., the ALJ credited [Plaintiff's] testimony regarding back pain with radicular symptoms due to his spinal degeneration by reducing him to the sedentary level of exertion" (id. at 7 (citing Tr. 25-26)). According to the Commissioner, "by crediting the basis of the VA rating, the ALJ de facto gave it

substantial weight." (Id.) The Commissioner's arguments amount to an impermissible invitation for the court to engage in post-hoc rationalization of the ALJ's decision. See SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

Although the ALJ found at step two that Plaintiff's lumbar and cervical degenerative disc disease qualified as severe impairments, the ALJ did so without expressly mentioning the VA's disability rating. (See Tr. 23-24.) Moreover, the severity determination at step two constitutes a de minimis, threshold finding designed to screen out claims obviously lacking in merit. See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987); Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2001). Thus, "[a] finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four." Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (citing Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000)). In other words, such a de minimis finding does not demonstrate that the ALJ afforded substantial weight to the VA's disability rating.

The Commissioner's contention that "the ALJ credited [Plaintiff's] testimony regarding back pain with radicular symptoms due to his spinal degeneration by reducing him to the sedentary level of exertion" (Doc. 13 at 7 (citing Tr. 25-26)) also falls short. In fact, the ALJ found that, "[p]rior to November 7, 2014, with regard to CAD, diabetes mellitus type 2, CHF, history of small bowel resection, COPD, stage III kidney disease, lumbar spine degenerative disc disease, cervical spine degenerative disc disease, and peripheral neuropathy, [Plaintiff] was limited to sedentary work." (Tr. 28 (emphasis added).) The ALJ also stated that he included a sit/stand option in the RFC as a result of "the combined effects of [Plaintiff's] service-connected disability caused by spinal disorders and his other severe impairments such as CHF, CAD, and chronic kidney disease." (Id. (emphasis added).) Because, in formulating the RFC, the ALJ analyzed only the combined effect of all of Plaintiff's severe impairments, the court cannot meaningfully review whether the ALJ's RFC reflects that he assigned substantial weight to the VA's 30% disability rating relating to Plaintiff's lumbar and cervical spine impairments. The court cannot supplement the ALJ's decision with findings he simply did not make. See Belanger v. Berryhill, No. 2:17-CV-00039-JHR, 2018 WL 1144389, at *3 (D. Me. Mar. 2, 2018)

18

("The commissioner . . . argues that . . . remand is unwarranted because the ALJ can be discerned to have given the VA decision some weight by virtue of her reliance on the same VA records on which the VA decision was based. . . . Yet, in so arguing, the commissioner in essence asks the court to uphold the ALJ's decision because the ALJ could have supportably found that the plaintiff's VA disability ratings decision was entitled to little weight. This the court cannot do." (citations omitted)); Brooks v. Berryhill, No. 8:16-cv-01229-MGL-JDA, 2017 WL 1531953, at *13 (D.S.C. Apr. 26, 2017) ("Clearly, regardless of the explanation propounded by the Commissioner, the ALJ's failure to assign weight to the VA decision, and her failure to conduct an evaluation of the VA decision starting with an acknowledgment of her duty to assign 'substantial weight,' leaves the Court unable to adequately review the decision or find that it is supported by substantial evidence."), recommendation adopted, 2017 WL 1735364 (D.S.C. Apr. 28, 2017); Bates v. Colvin, No. 12-CV-02268-MSK, 2013 WL 5418183, at *5 (D. Colo. Sept. 27, 2013) ("The Commissioner acknowledges . . . that the ALJ did not discuss the . . . VA determination in his [d]ecision, but asserts that there is no error because the VA determination was after the [Date Last Insured] . . . . The ALJ did not provide this explanation,

however.   The  [d]ecision  made  no  mention  of  the . . . VA
determination,  nor  of  the  reason  for  excluding  it. . . . [T]his
court may not create or adopt post-hoc rationalizations to support
the ALJ's decision that are not apparent from the ALJ's decision
itself." (internal quotation marks omitted)).

In  sum,  the  ALJ's  failure  to  analyze  and  weigh  the  VA's
disability rating warrants remand.  Upon remand, the ALJ should
obtain a copy of any VA disability rating decision(s) pertaining
to Plaintiff.

In  light  of  that  recommendation,  the  court  need  not  reach
Plaintiff's argument that the ALJ violated his duty to fulfill the
record  by  failing  to  obtain  a  copy  of  the  VA  disability  rating
(see Doc. 11 at 5-7), particularly where some courts appear to
disagree  on  the  party  bearing  the  burden  to  obtain  that  type  of
evidence, compare, e.g., Gillis v. Colvin, No. 1:14CV426, 2015 WL
4644777, at *4 (M.D.N.C. Aug. 4, 2015) ("While Plaintiff submitted
the  VA  decision  into  the  record,  he  did  not  submit  the
evaluation . . . upon  which  the  rating  appears  to  be  primarily
based. . . . [T]he  ALJ  actually  held  the  record  open  []  after
Plaintiff's administrative hearing specifically so Plaintiff could
submit the evaluation to the Commissioner. . . . [T]he burden is
on      a      claimant      to      present      evidence      of      his

20

disability[,] . . . . includ[ing] furnishing medical evidence supporting his claim. The undersigned can see no error in the ALJ properly noting that the record did not contain the [evaluation in question].”), recommendation adopted, slip op. (M.D.N.C. Aug. 26, 2015), with Jordan v. Astrue, No. 11-CV-03622, 2013 WL 865969, at *18 (S.D. Tex. Feb. 15, 2013) (“[I]t is noteworthy that the ALJ did not have the VA’s decisions before him when making his decision. . . . [A] more complete consideration of each of Plaintiff’s impairments, as discussed in those disability decisions, may have shown limitations that would impact [the plaintiff’s] ability to work . . . . In determining whether a disability exists, an ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. . . . [T]he various VA ratings in evidence should have prompted the ALJ to seek those agency decisions for further consideration of Plaintiff’s mental impairment. Because he failed to do so, his decision is not an informed one based on sufficient facts, and must be remanded for further consideration.” (internal citations, quotation marks, and brackets omitted)), recommendation adopted, 2013 WL 842820 (S.D. Tex. Mar. 6, 2013).[8]

---

[8] Because assessment and weighing of Plaintiff’s VA disability rating(s)

## III.  CONCLUSION

Plaintiff has established an error warranting remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is VACATED, and that the matter is remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, to include evaluation and weighing of any VA disability rating decision(s) pertaining to Plaintiff in accordance with Bird, the applicable regulations, and SSR 06-03p, as well as the resultant impact on Plaintiff's RFC prior to November 7, 2014.  As a result, Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) is GRANTED IN PART, i.e., to the extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Doc. 12) is DENIED.


                                   /s/   Thomas D. Schroeder
                                   United States District Judge

March 29, 2019

---

may well impact the RFC determination and/or the onset date of Plaintiff's disability, the court declines to address Plaintiff's remaining assignment of error alleging that "[t]he ALJ improperly evaluated Plaintiff's post viral cardiomyopathy when determining the onset date of his disability."  (Doc. 11 at 7.)